IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 22-cr-00225-REB

UNITED STATES OF AMERICA,
        Plaintiff,

v.

HASSAN McGLOTTEN,
        Defendant.

## MOTION TO SUPPRESS OUT-OF-COURT AND IN-COURT IDENTIFICATIONS

Mr. Hassan McGlotten, by and through his counsel, hereby moves this Court to suppress any and all evidence derived from the unduly suggestive show-up identification procedure that was performed in this case because its admission would violate his rights under the Fifth Amendment's Due Process Clause. Given the suggestivity and concomitant unreliability of the identification, the Court should exclude not only the out-of-court identification itself, but must also preclude the complaining witness from attempting to make an in-court identification during the trial. Mr. McGlotten respectfully requests a hearing on this motion.

### Factual Background

At 2:54 a.m. on the morning of Thursday, June 2, 2022, a seventeen-year old called 911 to report that a man had driven up to him as he was walking around his suburban neighborhood talking on the phone. The caller reported that the man had said something unintelligible to him and then had pulled out a gun, causing the witness to turn and run inside his brother's home. *See* Exhibit A, audio-clip of the 911 call, conventionally filed, WPD_048. While the complainant could not describe the gun (after

first saying he didn't see it at all), he could only describe the man as being black with a medium build and couldn't say if the man had an accent.  He did tell police that the man was driving a red Jeep Cherokee.  *Id.*

At approximately 3:03 a.m., Officer David Gustafson of the Westminster Police Department arrived at the complainant's residence to interview him.  *See* Exhibit B, Officer Gustafson's body-worn camera footage from that evening, conventionally filed, WPD_045.  The witness explained that he had been outside smoking a cigarette when the Jeep approached him and began to describe the encounter to the officer.  At 3:05 a.m., less than two minutes after he arrived, Officer Gustafson told the witness that officers had stopped someone matching the description, although he added that he didn't yet know if the officers had found a gun in the car. *Id.* at 2:10 through 2:18.  When Officer Gustafson asked what the man looked like, the only description that the witness was able to give, even with prompting, consisted of a black male of about average height.  *Id.* at 5:36 through 6:08.  He could not, and did not, describe the man's age, clothing, complexion, hairstyle, tattoos, or any other identifying features.

At approximately 3:18 a.m., Officer Gustafson again told the witness that police had stopped someone matching the description in the area (*id.* at 15:54-16:00), and administered a formal warning about the show-up identification procedure that the police were about to conduct, explaining that he just needed to know, "when you see him, how . . . what percentage of positive you are that it's the guy."  *Id.* at 16:04 through 18:07.  When the witness asked if he could hear the man talk to help him make an identification, Officer Gustafson explained that would not be possible.  *Id.* at 17:20 through 17:30.  Officer Gustafson then drove the witness to the scene where Mr.

McGlotten had been stopped, radioing to other officers to "get him ready" (*id.* at 21:20 through 21:23), and driving his police vehicle past a number of other police cars which were all parked directly behind a red Jeep, one of which had Mr. McGlotten seated on the front bumper with his hands cuffed behind him.[1]  See Exhibit C-1, an excerpt from Officer Daniel Gilbert's body-worn camera footage from that evening depicting the show-up procedure, conventionally filed, WPD_044; *see also* Exhibit C-2, a second excerpt from Officer Gilbert's body-worn camera footage depicting the scene, including the position of the Jeep in relationship to the police vehicles and the gun being removed from the hood of a police cruiser at 3:30 a.m. (i.e. after the show-up was complete). Ultimately, the witness told Officer Gustafson "that's him" and that he is "90% sure" of his identification at around 3:25 a.m.  See Exhibit B at 22:20 through 23:16.

After the show-up procedure concluded, Officer Gustafson had the witness complete a written statement describing the incident which is reproduced in its entirety below (WPD_030):

> I was walking around smoking a ciggarette and seen a Jeep stop. and make a turn speeding my way and make a U turn and get out and say something I couldn't make up and pulled a gun So I ran fast Inside the house.

Before leaving the residence, Officer Gustafson assured the witness that, "that guy is getting arrested".  Exhibit B at 35:30 through 35:40.

---

[1] Because Officer Gustafson's body-worn camera is pointed at the steering wheel during this portion of Exhibit B, it does not depict the witness' perspective during the identification itself.

**Legal Standard**

Under the Due Process Clause of the Fifth Amendment, no person shall be "deprived of . . liberty . . . without due process of law." This concept of due process necessarily embodies certain core principals of fairness in criminal proceedings. *See, e.g., Stovall v. Denno,* 388 U.S. 293, 301 (1967). The Supreme Court has expressly stated its concerns for "fairness as required by the Due Process Clause" in safeguarding the criminal legal system against the use of unreliable eyewitness identification evidence. *Manson v. Brathwaite*, 432 U.S. 98, 113 (1977). These concerns are at their highest where there is evidence of suggestivity in an identification procedure. As the Supreme Court noted in *Brathwaite*, "[i]dentification evidence is so convincing to the jury that sweeping exclusionary rules are required. Fairness of the trial is threatened by suggestive confrontation evidence…" *Id.* at 110.

As such, the Supreme Court has instructed courts to examine the totality of the circumstances surrounding an identification procedure (*id.* at 114), and has established a two-step process to determine the admissibility of identification testimony. *See id.* at 110; *United States v. Sanchez*, 24 F.3d 1259, 1261-62 (10th Cir.2014). "[F]irst, the court must determine whether the [photo array] was impermissibly suggestive, and if it is found to be so, then the court must decide whether the identifications were nevertheless reliable in view of the totality of the circumstances. . . These two prongs must be analyzed separately, and it is only necessary to reach the second prong if the court first determines that the [array] was impermissibly suggestive." *Sanchez* at 1261-1262.[2]

---

[2] *Sanchez* concerned the use of a photo array, and the court explained that it must consider a number of factors in its suggestivity inquiry including, "the size of the array, the manner of its presentation by the officers, and the details of the photographs

4

When assessing the reliability of a suggestive identification, the Court must consider (1) the witness' opportunity to view the perpetrator at the time of the crime; (2) the witness' degree of attention at the time of the offense; (3) the accuracy of the witness' prior description of the perpetrator; (4) the witness' level of certainty when identifying the defendant as the perpetrator at the time of the confrontation; and (5) the length of time between the crime and the confrontation. *Brathwaite* at 114 (citing *Neil v. Biggers*, 409 U.S. 188, 199-201 (1972)).  Those reliability factors are then weighed against the "corrupting effect of the suggestive identification itself."  *Grubbs,* 982 F.2d at 1489-90 (internal citations omitted).  "A pretrial identification procedure does not violate due process unless it is, 'so unnecessarily suggestive that it is 'conducive to irreparable mistaken identification.'"  *Bredy*, 209 F.3d at 1195 (internal citations omitted).  If the Court finds both that the pretrial identification was impermissibly suggestive, and that the suggestivity is not outweighed by the reliability of the identification given the "corrupting effect" of the suggestive procedure, the pretrial identification must be suppressed.

A separate, but related, issue is whether to permit an in-court identification of a defendant where a pretrial identification has been suppressed.  Here, the Court can only allow a witness to make an in-court identification when there is an independent, and untainted, basis for the identification. *United States v. Wade*, 388 U.S. 218 (1967).

---

themselves". *Sanchez* at 1262.  While the specific inquiry is different in a case that involves a show-up identification procedure, the applicable legal test is unchanged. *See, e.g., United States v. Bredy*, 209 F.3d 1193 (10th Cir. 2000); *Grubbs v. Hannigan*, 982 F.2d 1483, 1489-90 (10th Cir. 1993); *Archuleta v. Kerby*, 864 F.2d 709, 711 (10th Cir.1989).

**Argument**

Because eyewitness identification testimony has incredible persuasive power, the Court must handle it with extreme care. Here, an impermissibly suggestive show-up identification procedure was used. Nor can this problem be overcome because the identification is otherwise reliable. Indeed, the opposite is true. As set forth in more detail below, the *Biggers* factors weigh against, not for, the admission of this evidence; when that evidence is weighed against the "corrupting effect of the suggestive identification itself," the Court should not hesitate to exclude the show-up identification from trial. Moreover, where, as here, an out-of-court identification is unduly suggestive and unreliable, the government can elicit an in-court identification only if there is an independent and reliable source for it. *See Neil v. Biggers*, 409 U.S. 188, 201 (1972); *United States v. Wade*, 388 U.S. 218, 239-241 (1967). Because any attempted in-court identification of Mr. McGlotten would not be free of the taint of the show-up procedure, all identification testimony must be excluded at trial in this case.

**I.     The out-of-court identification of Mr. McGlotten must be suppressed as a violation of the Due Process Clause.**

   A.   *The show-up identification in this case was impermissibly suggestive.*

Courts have long indicated that a single suspect "show-up" identification procedure is impermissibly suggestive. *Stovall v. Denno,* 388 U.S. 283, 302 (1967) (abrogated on other grounds in *United States v. Johnson,* 457 U.S. 537 (1982)). In *Stovall,* the Supreme Court noted that "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a line up, has been widely condemned." *Id.* The Tenth Circuit has similarly articulated concerns about these types of procedures. "With respect to the suggestiveness of the identification, we note that, in

6

general, show-up identifications (those involving the identification of a single individual) are less than ideal." *United States v. Natalini,* 42 Fed. Appx. 122, 127 (10th Cir. 2002) (unpublished). "Accordingly, such procedures 'should be employed only if compelled by extraordinary circumstances.'" *Id.* (quoting *United States v. Newman,* 144 F.3d 531, 535 (7th Cir. 1998)). *See also United States v. Silva*, Case No. 14-CR-4067 JAP, 2016 WL 10587962, at *5 (D. N.M. Mar. 4, 2016) (unpublished) ("From the moment the Supreme Court recognized a due process right to exclude from evidence tainted eyewitness identifications, the Supreme Court has looked unfavorably on "show-up" procedures. . . The passage of years has not eroded this condemnation.").

Indeed, courts have not hesitated to find (and the government has often conceded in similar circumstances) that a show-up identification was unduly suggestive. *See e.g., Manson v. Brathwaite*, 432 U.S. at 109 (government conceded that an identification from a single photo was suggestive)*; Archuleta v. Kerby*, 864 F.2d 709 (10th Cir. 1989) (government conceded that a show-up where the defendant was shown to the witness while handcuffed and in the back of a police car was unduly suggestive); *see also United States v. Calderon,* Case No. 22-CR-00113-WJ, 2022 WL 17585801, at *4- 5 (D. N.M. Dec. 9, 2022) (unpublished) (government conceded that show-up was unduly suggestive when the witness had been told that officers had a suspect); *United States v. Swinton*, Case No. 22-CR-121-TS, 2022 WL 16553190, (D. Utah Oct. 31, 2022) (unpublished) (finding single-photo identification procedure unduly suggestive when police told the witness that officers had detained a suspect and then showed him a single photo of a person with his hands cuffed behind his back); *United States v. Wofford*, Case No. 17-CR-85-JED, 2017 WL 5514176, at *4-5, (N.D. Oklahoma

7

Nov. 17, 2017) (unpublished) (excluding all identification testimony arising from an "unnecessarily suggestive show-up identification process that posed a significant risk of unreliable identifications"); *United States v. Silva*, Case No. 14-CR-4067 JAP, 2016 WL 10587962, at *6 (D. N.M. Mar. 4, 2016) (unpublished) (excluding identification testimony and noting that a show-up procedure is impermissibly suggestive because it "implies that the police have their man and suggests the witness give assent.  Suggestibility is one of the principal ways in which memory plays tricks and leads to improper identifications.") (internal citations omitted).

      The identification procedure at issue herein was likewise hopelessly suggestive. The complainant relayed to a 911 operator a description that consisted, in its entirety, of a medium-sized black man who was driving a red Jeep Cherokee.  There was no clothing description given, no information about the man's age or hair or tattoos—nothing at all beyond a medium-sized black male.  Even with Officer Gustafson's prodding, the complainant was never able to give police a more detailed description. Yet, within a minute or two of Officer Gustafson arriving at the complainant's home, he informed the witness that we had "stopped someone that matched the description," and then reiterated that information prior to driving him to the actual show-up.  And while Officer Gustafson did read the complainant a warning prior to the identification procedure and reminded him that he did not have to make an identification, the show-up itself was deeply problematic.  Despite the vehicle being incredibly central to the complainant's description (indeed, he gave a much more detailed description of it than of the person he says emerged from it), the complainant was transported to the location of the stop and shown Mr. McGlotten while he was illuminated by the lights of multiple

8

police vehicles, in handcuffs, with an officer's flashlight shining on him, only feet away from the red Jeep, and with a firearm still sitting on the hood of a police vehicle.

Show-ups such as this one have long been known to be problematic and are only to be used "if compelled by extraordinary circumstances". *Natalini,* 42 Fed. Appx. At 127 (10th Cir. 2002).[3]  None existed here.  "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Biggers*, 409 U.S. at 188.

And as with photo arrays, the Court should consider the manner in which the defendant was exhibited to the witness—here, Mr. McGlotten was clearly in police custody.  He was alone, illuminated by flashing emergency lights, and handcuffed.  Moreover, Officer Gustafson told the witness not once but twice that the police had found a person who "matched" the description.  Courts have not hesitated to find that these circumstances create undue suggestivity. *See e.g., Grubbs v. Hannigan*, 982 F.2d 1483, 1490 (10th Cir. 1993) (finding that officer's choice to tell the witness that they had a suspect in custody compounded the suggestivity of the procedure); *Archuleta v. Kerby*, 864 F.2d at 711 (show-up where defendant was in handcuffs and in back of police cruiser was unduly suggestive); *Swinton*, 2022 WL 16553190 at *2-3 (a single photo of a person in handcuffs who the witness knew was in police custody was unduly

---

[3] The witness in *Stovall* was confined to a hospital and thought to be near death. *Stovall*, 388 U.S. at 302.  By contrast, Mr. McGlotten and the complainant both lived in the immediate vicinity of the stop.  Mr. McGlotten cooperated fully with officers, and his wife came to the location of the stop and also spoke with officers.  There was no urgent need that prevented the police from conducting a proper and non-suggestive identification procedure in this case.

9

suggestive); *Silva,* 2016 WL 10587962, at *12 (excluding all identification testimony after a suggestive single photo identification).

The show-up procedure here was likewise impermissibly suggestive.

B. *The identification was not reliable.*

The Supreme Court has held that, even if an identification procedure is found to be unnecessarily suggestive, it may still be admissible if the identification is sufficiently reliable to avoid a violation of due process. *Brathwaite*, 432 U.S. at 106. It is the government's burden to prove that an unduly suggestive identification procedure was not "tainted" enough to render it unreliable. *United States v. Wade*, 388 U.S. 218, 241 (1967); *Silva* at * 8-12. When determining the reliability of an eyewitness' identification, the Court should consider factors such as: (1) the witness' opportunity to observe the criminal activity, (2) the witness' level of attention, (3) the detail and accuracy of any description provided, (4) the certainty of the identification, and (5) the time between the crime and identification. *Biggers,* 409 U.S. at 199-200. Counsel respectfully submits that none of these factors can be properly addressed without a hearing on the matter. However, even given what little information we have regarding the identification at issue, counsel submits that it is sufficiently unreliable so as to require its exclusion from trial.

First, it appears that the complaining witness did not have a particularly good "opportunity to observe" the individual he described to police. He explained to the police that it was too dark for him to, for example, be able to describe the gun. It is also evident from his statements that this was a brief interaction where all of the events happened quickly. The complainant "didn't remember" the subject's clothing (at least

not until after being shown Mr. McGlotten; Exhibit B at 23:00 through 23:10).  He either "didn't see the gun" (his initial statement on the 911 call) or "didn't get a good look" at the gun and couldn't describe it to Officer Gustafson.  He didn't know what the man had said to him or if he had an accent.  He turned and ran into the house once he believed the man had a gun.  The paucity of detail in the complainant's description of both the events and the suspect himself strongly suggest that his opportunity to observe was significantly compromised.

Second, there is likewise good reason to doubt the witness' "level of attention." He provided Officer Gustafson with a very limited description of the individual which consisted, in its entirety, of a medium-sized black male.  He said he didn't recall his clothes and made no mention of any specific characteristics such as age, hair length or color, scars, facial hair, tattoos, etc.  Moreover, the presence of a weapon, as is alleged in this case, has long been recognized to be a factor which, necessarily, reduces the level of attention that a witness is able to pay to the actual features of their assailants as opposed to the weapon itself.  *See, e.g., New Jersey v. Henderson*, 27 A.3d 872, 904-905 (2011).  This weapons focus effect, when combined with the very limited description offered by the complainant of his putative assailant, suggests that he was unable to give a high level of attention to the actual identity of the man who got out of the car.

Third, the "detail and accuracy" of the witness' statements should also give the Court pause.  The level of detail was incredibly sparse.  And while it is true that Mr. McGlotten is a black male, he is 5'9 and 250 pounds according to police records from that evening (*see Exhibit D*, WPD_001):

| Race | Ethnicity | Sex | Height | Weight | Hair Color | Eye Color |
|---|---|---|---|---|---|---|
| B | Non-Hispanic | Male | 5'09" | 250 | Black | Brown |

11

While a man of that height and weight might be what some people mean when they describe a "medium"-sized man, others might—just as accurately—describe him as being "shorter" or as being "somewhat heavyset". Moreover, Mr. McGlotten was wearing red pajama pants and a shirt with a large red "B" on the front when he was arrested (along with slippers)—notable things to omit from a description.  *See Exhibit D* WPD_002; *see also Exhibit E*, Mr. McGlotten's booking photo, WPD_057

      Fourth, even though the complainant told police that he was 90% confident in his identification of Mr. McGlotten, he only did so after receiving numerous bits of positive reinforcement along the way: including Officer Gustafson telling him twice that the police had found a matching person, his view of Mr. McGlotten during the identification coming while he was in handcuffs and bathed in officers' flashlights and emergency lights, and the presence of both a red Jeep and a gun in Mr. McGlotten's immediate proximity at the time that the identification was made.[4]  These suggestive cues in how Mr. McGlotten was displayed to the witness can create serious and incurable prejudice because they create a feedback reinforcement loop—something that has long been understood to problematize witness accuracy and confidence.  *See, e.g., Grubbs*, 982 F.2d at 1490 (discussing the impact of "coaching").  For example, the Virginia State Crime Commission has recognized the potential harm of "feedback" to accurate eyewitness identifications, noting the following:

> "People often believe that confidence relates to accuracy, that a witness that is confident in his/her identification is more than likely to be accurate. However, research indicates that feedback influences eyewitness confidence and is independent of accuracy. Feedback can come in the form of instructing eyewitnesses that a co-witness identified the same person or confirming, outright or through inadvertent verbal and

---

[4] Officer Gustafson also told the witness that "that guy is getting arrested" after the show-up had been concluded. *See Exhibit B* at 35:30 through 35:40.

body cues, that the person identified is the actual suspect. This feedback can induce false confidence in witnesses."

*Report of the Virginia State Crime Commission: Mistaken Eyewitness Identification 6 (2005).*

Unsurprisingly, because social science research tells us that there is no relationship between a witness' confidence in his identification and that identification's accuracy, the use of certainty as a factor has been increasingly condemned by courts as irrelevant to the reliability of an identification. As the Fourth Circuit noted in *United States v. Greene*, 704 F.3d 298(4th Cir. 2013), there is "considerable research showing that an eyewitness' confidence and accuracy have little correlation." *Greene*, 704 F.3d at 309, *n.*4 (also noting that witness certainty has "come under withering attack as not relevant to the reliability analysis."). The *Greene* court cited many cases where courts have rejected using the certainty of the eyewitness as part of their reliability analysis. *Id.* This Court, while required to consider certainty as one of the *Biggers* factors, can place as much or as little weight on this factor as it deems fit. In light of the preceding considerations, Mr. McGlotten urges the Court to give little weight to this factor as, whatever level of confidence the complainant may have in his identification, it is inexorably tied up with the flawed and tainted identification procedure that produced it.

Moreover, although the time between the encounter and the identification was relatively short, this alone is not sufficient to salvage the reliability of the identification—particularly when a more reliable procedure could easily have been conducted. Mr. McGlotten was fully cooperative with the officers. His wife appeared on the scene of the stop. He lived only a few blocks away. It would not have been difficult for the officers to prepare a photo array or to, at a minimum, arrange the scene so that Mr. McGlotten was not handcuffed and illuminated by five or six police vehicles, was not

13

seated near a red Jeep, or that the gun was removed from the hood of the police vehicle.  Each of these mistakes outweighs whatever benefit there may have been to the conduct of a prompt identification procedure—particularly given that the complainant had an extremely limited amount of descriptive information about the suspect.  Based on the *Biggers* factors, the Court cannot find that the complainant's out-of-court eyewitness identification was reliable, particularly in light of the corrupting suggestivity that attended it.  Therefore, any and all testimony about the show-up identification should be excluded from trial.

**II.     Any attempt at an in-court identification of Mr. McGlotten by the complaining witness must also be suppressed.**

When an out-of-court identification is so impermissibly suggestive and unreliable that it cannot be eliminated of the "primary taint," there must be an independent source to support it, should the government want to attempt to elicit an in-court identification.  *See Biggers*, 409 U.S. at 201; *Wade*, 388 U.S. at 239-241.  If an out-of-court identification by a witness is found to be too unreliable to permit its admission, the Court should exclude any in-court identification by the witness unless that in-court identification is based upon some "independent recollection . . . uninfluenced by the pretrial identifications."  *United States v. Crews,* 445 U.S. 463, 472-73 (1980).

There is no evidence of a sufficient independent and untainted source for an in-court identification in the present case.  *Compare with United States v. Klein*, 93 F.3d 698, 702 (10th Cir. 1996) (witness who had three separate prior interactions with the defendant that ranged from between ten to forty-five minutes in length *could* make an in-court identification despite the suppression of testimony related to an unduly suggestive photo array).  Here, if the out-of-court identification is unreliable, it is not

14

reasonable to believe that any in-court identification the witness may make months after the incident would be untainted by his involvement in the flawed and suggestive identification procedure, given that the witness has already associated the person identified with the crime. Therefore, any attempted in-court identification of Mr. McGlotten by the complaining witness should also be excluded from trial.

## Conclusion

The identification procedure in this case violated Mr. McGlotten's rights under the Due Process Clause of the Fifth Amendment because it was impermissibly suggestive and inherently unreliable. As such, evidence of the show-up identification procedure and all future attempts at in-court identification must be suppressed.

WHEREFORE, based on the aforementioned grounds, and for any others that might become apparent at a hearing on this motion, Mr. McGlotten respectfully requests that this Court suppress all evidence obtained by this violation of his rights.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

s/ Stephanie Snyder
STEPHANIE SNYDER
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Stephanie_Snyder@fd.org
Attorney for Defendant

# **CERTIFICATE OF SERVICE**

      I hereby certify that on February 3, 2023, I electronically filed the foregoing ***Motion to Suppress Out-Of-Court and In-Court Identifications*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email address:

    Laura Cramer-Babycz, Assistant United States Attorney
    Email:  laura.cramer-babycz@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non-CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

    Hassan McGlotten (via U.S. Mail)

                          s/ *Stephanie Snyder*
                          STEPHANIE SNYDER
                          Assistant Federal Public Defender
                          633 17th Street, Suite 1000
                          Denver, CO  80202
                          Telephone: (303) 294-7002
                          FAX: (303) 294-1192
                          Stephanie_Snyder@fd.org
                          Attorney for Defendant