IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 22-cr-00225-REB

UNITED STATES OF AMERICA,
        Plaintiff,

v.

HASSAN McGLOTTEN,
        Defendant.

## MOTION TO SUPPRESS

Mr. Hassan McGlotten, by and through his counsel, hereby moves this Court to suppress all evidence obtained as a result of the following violations of his Fourth and Fifth Amendment rights: (1) a traffic stop initiated without reasonable suspicion; (2) custodial interrogation without *Miranda* warnings; and (3) the warrantless search of his car.

## STATEMENT OF FACTS

On June 2, 2022, around 3:00 a.m., Westminster Police Department (WPD) dispatch aired a report of an alleged felony menacing at 11102 N. Bryant Ct. in Westminster, Colorado. The suspect was a black male in a red Jeep Cherokee who reportedly pulled a handgun on the alleged victim. The suspect presumably drove away in the red Jeep, but his direction of travel was unknown.

A few minutes later, WPD Officer Gilbert was coming into the area when he saw a red SUV driving eastbound on 112th Street, heading in the opposite direction of the Bryant Ct. address. Officer Gilbert cleared the license plate, which came back to a red

Jeep Grand Cherokee. The Jeep turned north onto Pecos Street where Officer Gilbert initiated a "high risk" traffic stop.

At least two more WPD officers immediately arrived on scene with their emergency lights on. They all drew their firearms and pointed them at the Jeep. Officer Gilbert shouted commands at the driver to roll down his window, show his hands, open the door, and step out of the vehicle slowly. At gunpoint, a black male, later identified as Hassan McGlotten, emerged from the driver's side as multiple officers yelled at him to keep his hands up. Officer Gilbert ordered him to slowly spin in a circle with his hands up, then walk backward toward the officers.

Officer Xiong took over giving commands and ordered Mr. McGlotten to walk backward toward him. As Mr. McGlotten got closer, Officer Xiong ordered him to get on his knees and put his hands behind his back. Officer Xiong, knowing that he was responding to a suspected felony menacing with a firearm, asked, "You don't have any weapons or anything like that do you?"

"No sir, but my wife does," Mr. McGlotten responded.

"Your wife does?" Officer Xiong asked. "What does she have on her?"

Mr. McGlotten replied, "She's on her way here right now."

"Where is she now?" the officer asked.

"She's on her way here. Someone just tried to break into our car. Right there on 2601 West 112th Avenue. My wife is there right now. She's on her way here."

Officer Xiong continued asking questions as he handcuffed Mr. McGlotten. "Who else is in the car? Just you?"

"Yes, sir," Mr. McGlotten confirmed. He said he was just driving around.

2

"You said someone tried to break into your car?" Officer Xiong asked as he stood Mr. McGlotten up and moved him toward the police car. Mr. McGlotten explained that someone was at his house looking through his car window.

Officer Xiong frisked Mr. McGlotten and placed him in the backseat of the police car. Mr. McGlotten reassured him that no one else was in the car. Officer Xiong responded: "We're just going to make sure." Officer Gilbert and two other officers then approached the Jeep and confirmed that no one else was in it.

Officer Xiong and Mr. McGlotten continued to discuss the circumstances underlying the alleged felony menacing. Mr. McGlotten explained that he saw some people, including a guy on a cell phone, looking into his car. He and his wife went outside to see what was going on. Mr. McGlotten then got into his car to drive around. Officer Xiong explained that someone at 112th and Bryant called the police and reported that a black male in a red Jeep had pulled a gun on him and cocked it. Mr. McGlotten denied that he cocked any gun.

"So there's no guns in the vehicle or anything like that?" Officer Xiong inquired.

"We have guns," Mr. McGlotten admitted.

"In the vehicle?" Officer Xiong asked.

"Yes," Mr. McGlotten confirmed. However, he continued to deny that he ever cocked the gun at anybody. He also explained that it was his wife's firearm, and it was legally registered to her. Mr. McGlotten continued to tell his side of the story and deny that he committed any felony menacing.

Meanwhile, Officer Gilbert was searching Mr. McGlotten's vehicle. Officer Gilbert opened the passenger side door and saw a backpack on the floor. He picked up the

3

backpack, which revealed that a Draco firearm was tucked under the passenger seat. In a later filed police report, Officer Gilbert represented that the firearm was "in plain sight."

Mr. McGlotten was eventually booked into Adams County jail for felony menacing, possession of a weapon by a previous offender, and violation of a protection order. Ultimately, a federal grand jury indicted Mr. McGlotten on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He now moves to suppress evidence obtained as a result of multiple constitutional violations.

## ARGUMENT

The WPD officers committed no less than three constitutional violations, all requiring the suppression of evidence. First, Officer Gilbert initiated a "high risk" traffic stop without reasonable suspicion. Second, Officer Xiong conducted a custodial interrogation without a *Miranda* advisement. And third, contrary to Officer Gilbert's representation, the firearm was not "in plain sight."

**I.      Officer Gilbert did not have reasonable suspicion to initiate the traffic stop.**

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. A "traffic stop is considered a seizure within the meaning of the Fourth Amendment." *United States v. Martinez*, 910 F.3d 1309, 1313 (10th Cir. 2018). A traffic stop is justified at its inception "if the officer observes or reasonably suspects a traffic or equipment violation," or "if the officer harbors 'a reasonable suspicion that criminal activity may be afoot.'" *Id.* (citation omitted). Here, Officer Gilbert did not observe or suspect any traffic violation. Thus, the stop is only justified if he had reasonable suspicion that the "occupants were involved in criminal activity." *Id.* Because

4

matching a generic description of a vehicle is not enough, Officer Gilbert violated Mr. McGlotten's constitutional rights.

*United States v. Jones*, 990 F.2d 883 (10th Cir. 1993), is instructive. There, the officers "knew only that two black men had left a disturbance five minutes earlier in a black Mercedes." *Id.* at 884-885. "While they had some description of the clothing the men were wearing, they could not see the clothing that the occupants of this vehicle were wearing at the time they initiated the stop." *Id.* at 885. "They were not told of any further distinguishing features of the car, such as a partial license plate or a dent." *Id.* "[T]hey had no idea in what direction the men were travelling." *Id.* And there was "no evidence suggesting that the area within a five minute drive from the scene of the disturbance was either sparsely populated or lightly driven." *Id.* "Nevertheless, the officers singled out this car, out of all the cars in the area, for a massive intrusion based solely on the color and manufacturer of the car, and the fact that it contained two black men." *Id.* "Absent a strong showing, on the record and based on objective statistics, that the sight of two African–Americans in a black Mercedes was a highly unusual event, [the court could ]not sanction the officers' claim that this flimsy evidence provided them with a reasonable suspicion that they had found the car that fled the disturbance." *Id.*

The same is true here, except the evidence is weaker, and the intrusion is even more massive. As in *Jones*, the reported incident occurred approximately five minutes earlier, and the officers had no information about the car's direction of travel. They had only a basic description of the car—no unique features such as a partial license plate or a dent. However, unlike *Jones*, where the officers confirmed the car's occupants matched the most basic description of the suspects (i.e., two black males), Officer

5

Gilbert failed to even confirm that a black male was driving the red Jeep Cherokee before initiating the maximally intrusive and life-threatening "high risk" stop.

Accordingly, "[a]bsent a strong showing, on the record and based on objective statistics, that the sight of [a red Jeep Cherokee] was a highly unusual event," this Court "cannot sanction [Officer Gilbert's] claim that this flimsy evidence provided [him] with a reasonable suspicion that [he] had found the car that fled the disturbance." *Id.* Unless the government carries its burden, the traffic stop was unlawful, and all evidence obtained following the stop must be suppressed.

**II.     Officer Xiong subjected Mr. McGlotten to custodial interrogation without a *Miranda* warning.**

"The Fifth Amendment affords citizens the right to remain silent, to have an attorney present, and to be informed of these rights when the individual is both (1) in custody and (2) subject to interrogation by police." *United States v. Woody*, 45 F.4th 1166, 1176 (10th Cir. 2022) (citing *Miranda v. Arizona*, 384 U.S. 436, 477-79 (1966)). "If a defendant is not apprised of his rights, or if he is but he declines to knowingly and voluntarily waive these rights and agree to answer questions, then 'no evidence obtained as a result of interrogation can be used against him.'" *United States v. Sanchez*, 13 F.4th 1063, 1074 (10th Cir. 2021) (quoting *Miranda*, 384 U.S. at 479). Here, Officer Xiong subjected Mr. McGlotten to custodial interrogation by asking him incriminating questions during and after the "high risk" traffic stop.

First, it is clear that Mr. McGlotten was in custody. "An individual is in custody for *Miranda* purposes when 'a reasonable person in the suspect's position would understand his or her situation as "the functional equivalent of formal arrest."'" *United States v. Guillen*, 995 F.3d 1095, 1109 (10th Cir. 2021) (citation omitted). "This is an

6

objective, fact-intensive inquiry that focuses on the totality of the circumstances." *Id.* Some relevant factors are: "(1) whether the circumstances demonstrated a police-dominated atmosphere; (2) whether the nature and length of the officers' questioning was accusatory or coercive; and (3) whether the police made the defendant aware that he or she was free to refrain from answering questions, or to otherwise end the interview." *Id.* (citation omitted).

It was certainly a "police-dominated atmosphere." No less than three patrol cars had their emergency lights on, multiple officers held Mr. McGlotten at gunpoint, and he was commanded to get on his knees in the middle of the street to be handcuffed. Mr. McGlotten was not told that he was free to refrain from answering any questions. The questioning may not have been particularly lengthy or accusatory, but under the totality of the circumstances, a reasonable person in Mr. McGlotten's situation would have understood that he was in police custody. *See* Wayne R. LaFave, 2 Criminal Procedure § 6.6(f) (4th ed. 2022 update) (A court "is likely to find custody if there was physical restraint such as handcuffing, drawing a gun, holding by the arm, or placing into a police car." (footnotes omitted)).

Officer Xiong's questioning also amounted to interrogation. "Interrogation" refers to "express questioning" or "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301-02 (1980). Here, Officer Xiong knew that Mr. McGlotten was suspected of felony menacing with a firearm. Thus, he certainly should have known that asking Mr. McGlotten whether he had any weapons ("You don't have any weapons or anything like that do you?") was reasonably likely to elicit an

7

incriminating response. Predictably, it did. This question caused Mr. McGlotten to explain that his wife had a firearm and launched a substantial discussion about the circumstances underlying the alleged felony menacing, driven by Officer Xiong's repeated questions ("Your wife does? What does she have on her?"; "someone tried to break into your car?"). While Mr. McGlotten was handcuffed in the back seat of the police car, Officer Xiong even asked him whether there were "guns in the vehicle or anything like that." Without the benefit of a *Miranda* warning, Mr. McGlotten confessed there was a gun in the car. Because Mr. McGlotten's statements are the product of unwarned custodial interrogation, they must be excluded.

To be sure, the Tenth Circuit has held that the *Quarles* "public safety exception" permits "an officer to ask, 'Do you have any guns or sharp objects *on you*,' without first giving the *Miranda* warnings." *United States v. Mikolon*, 719 F.3d 1184, 1187 (10th Cir. 2013) (quoting *United States v. Lackey*, 334 F.3d 1224, 1226 (10th Cir. 2003)). This is solely to address the risk of "potential for injury when the suspect was searched or frisked." *Id.* Here, however, Officer Xiong did not limit his question to whether Mr. McGlotten had any weapons *on him*, and Mr. McGlotten understandably did not interpret the question this way. Accordingly, this narrow application of the "public safety exception" does not apply.

Apart from that situation, the public safety exception applies only if the officer has "reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it." *Id.* It clearly does not apply here because Officer Xiong had no reason to believe that someone other than the police might gain access to the weapon and inflict

8

harm with it. The officer had no information that anyone else was with Mr. McGlotten and no reason to believe that a member of the public would stumble upon a firearm or attempt to access Mr. McGlotten's car while it was surrounded by WPD officers. Accordingly, the public safety exception does not apply, and all of Mr. McGlotten's unwarned statements must be suppressed.

**III.     The firearm was not in plain view and cannot justify the warrantless search of Mr. McGlotten's car.**

Finally, this Court must suppress all evidence obtained as a result of the warrantless search of Mr. McGlotten's vehicle. The "basic rule" is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject to only a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). It is "the government's burden to prove warrantless searches fall within an exception to the warrant requirement." *United States v. Johnson*, 43 F.4th 1100, 1116 (10th Cir. 2022). According to his report, Officer Gilbert justified his warrantless search of Mr. McGlotten's car because the firearm was "in plain sight," apparently invoking the "plain view" doctrine. However, the footage from his body-worn camera (BWC) belies his claim that the firearm was "in plain sight."

Under the "plain view" doctrine, officers may seize incriminating evidence only if three conditions are met. First, it "is of course, an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton v. California*, 496 U.S. 128, 136 (1990). Second, "not only must the item be in plain view; its incriminating character must also be 'immediately apparent.'" *Id.* And

9

third, "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself." *Id.* at 137. Here, the first condition is plainly lacking.

The BWC clearly shows the firearm was not in plain sight until *after* Officer Gilbert had already entered the car. That is, Officer Gilbert opened the passenger door, entered the car, and lifted a backpack off the floor of the car. Only then was the firearm "in plain sight." Of course, Officer Gilbert's warrantless entry into the vehicle cannot be justified based on what he subsequently found. Thus, the plain view doctrine does not apply, and all evidence obtained as a result of the warrantless search of Mr. McGlotten's car must be suppressed.

## **CONCLUSION**

Wherefore, Mr. Hassan McGlotten, through his counsel, respectfully requests this Court issue an order suppressing all evidence obtained in violation of his constitutional rights.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

s/ Stephanie Snyder
STEPHANIE SNYDER
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Stephanie_Snyder@fd.org
Attorney for Defendant

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 3, 2023, I electronically filed the foregoing ***Motion to Suppress*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email address:

    Laura Cramer-Babycz, Assistant United States Attorney
    Email: laura.cramer-babycz@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non-CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

    Hassan McGlotten (via U.S. mail)

                                      s/ Stephanie Snyder
                                      STEPHANIE SNYDER
                                      Assistant Federal Public Defender
                                      633 17th Street, Suite 1000
                                      Denver, CO  80202
                                      Telephone: (303) 294-7002
                                      FAX: (303) 294-1192
                                      Stephanie_Snyder@fd.org
                                      Attorney for Defendant