IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 22-cr-00225-REB

UNITED STATES OF AMERICA,
         Plaintiff,

v.

HASSAN McGLOTTEN,
         Defendant.

---

**MOTION TO DISMISS (PRESERVATION)**

---

    Hassan McGlotten, by and through his counsel, hereby moves this Court to dismiss the sole count of the Indictment, charging a violation of 18 U.S.C. § 922(g)(1), on two grounds: (1) Section 922(g)(1) is unconstitutional because Congress exceeded its Commerce Clause authority when it banned felons from possessing firearms; and (2) Mr. McGlotten's possession of the firearm did not affect commerce at the time he is alleged to have possessed it. Mr. McGlotten recognizes, however, that these arguments are currently foreclosed by Tenth Circuit precedent. Accordingly, he raises these issues for preservation purposes only.

**I.**    **Congress Exceeded Its Commerce Clause Authority When It Prohibited Felons from Possessing Firearms.**

    Section 922(g)(1) makes it a federal crime for somebody who has a qualifying felony conviction to "possess in or affecting commerce, any firearm or ammunition." Since *Scarborough v. United States*, 431 U.S. 563 (1977), federal felon-in-possession statutes have been construed to require only proof that the firearm in question moved

across state lines—even if it did so before the person became a felon or possessed the firearm. *See id.* at 577.

This minimal nexus with interstate commerce is too attenuated to justify the enactment of 18 U.S.C. § 922(g)(1) under the Commerce Clause. The Commerce Clause authorizes Congress "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. Art. I § 8, cl. 3. The Necessary and Proper clause, in turn, authorizes Congress "[t]o make all Laws which shall be necessary and proper" for executing its Commerce Clause power. U.S. Const., Art. I § 8, cl. 18. While Congress's Commerce Clause power is broad, it is "subject to outer limits" and is not a grant of federal police power. *United States v. Lopez*, 514 U.S. 549, 556-57, 566 (1995) (holding that federal law criminalizing possession of firearms within school zones exceeded Congress's commerce clause authority). Under modern Commerce Clause jurisprudence, Congress may rely on the clause to regulate: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce" (such as ships and railroads), or the movement of "persons or things in interstate commerce" using those instrumentalities; and (3) "activities having a substantial relation to interstate commerce," *i.e.*, activities that "substantially affect interstate commerce." *Id.* at 558-59.

Section 922(g)(1) does not fall within any of these three categories of permissible Commerce Clause regulation. The prohibition of firearms possession by those with qualifying prior convictions plainly does fall within the first two *Lopez* categories. It does not regulate the use of the channels of interstate commerce; nor does it regulate the instrumentalities of interstate commerce, or the movement of persons or things in

interstate commerce. *Cf. United States v. Patton*, 451 F.3d 615, 620-22 (10th Cir. 2006) (statute prohibiting felons from possessing body armor did not fall within first two categories).

The mere possession of a firearm that previously traveled in interstate commerce also does not "substantially affect" interstate commerce. Possession of a firearm, standing alone, is not a commercial or economic activity. *See Lopez*, 514 U.S. at 561 (firearms possession in a school zone "has nothing to do with 'commerce' or any sort of economic enterprise"). Firearms, moreover, are not fungible commodities in the same way that narcotic drugs are. *Cf. Gonzalez v. Raich*, 545 U.S. 1, 25-26 (2005) (distinguishing statute regulating marijuana from firearms possession statute at issue in *Lopez* on the ground that narcotic drugs are commodities). The jurisdictional hook of § 922(g)(1) is so broad that "it does not seriously limit the reach of the statute," as essentially all firearms will satisfy the test, and "there is no reason to think that possession of [a firearm] that satisfies the jurisdictional hook has any greater effect on interstate commerce than possession of any other [firearms]." *Patton*, 451 F.3d at 633 (addressing statute prohibiting felons from possessing body armor).

Any theoretical link between a felon's mere possession of a firearm and potential downstream effects on commerce are so attenuated that, if accepted, they would allow Congress to "regulate not only all violent crime, but all activities that might lead to violent crime, regardless of how tenuously they relate to interstate commerce," or even "any activity that it found was related to the economic productivities of individual citizens," including marriage, divorce, and child custody. *Lopez*, 514 U.S. at 564. Such a broad reading of Congress's Commerce Clause authority would be antithetical to the

3

Founders' purpose in creating a federal government of enumerated powers—and in withholding from Congress "a plenary police power that would authorize enactment of every type of legislation." *Lopez*, 514 U.S. at 566. For all these reasons, this Court should find that the mere possession of a firearm that at some point traveled in interstate commerce does not "substantially affect" interstate commerce.

Because § 922(g)(1) does not fall within any of the three categories of Commerce Clause regulation identified in *Lopez*, it is unconstitutional. That is so notwithstanding *Scarborough v. United States*, 431 U.S. 563 (1977). *But cf. Patton*, 451 F.3d at 634-36 (concluding that statute prohibiting felon possession of body armor was constitutional under *Scarborough*, notwithstanding its failure to satisfy *Lopez* categories). *Scarborough* construes a predecessor to § 922(g)(1), which prohibited any person with a qualifying felony conviction from "recei[ving], possess[ing], or transport[ing] in commerce or affecting commerce . . . any firearm." 431 U.S. at 564 (quoting 189 U.S.C. § 1202(a) (1970)). The Supreme Court held that the statute required only proof that the firearm had previously traveled in interstate commerce, reasoning that Congress intended to assert "its full Commerce Clause power" in enacting the law. *Scarborough*, 431 U.S. at 571. While *Scarborough* assumes that enacting a prohibition on felon firearms possession is a proper exercise of Congress's Commerce Clause authority, "[n]o party alleged that the statute exceeded Congress' authority, and the Court did not hold that the statute was constitutional." *Alderman v. United States*, 131 S. Ct. 700, 701 (2011) (Thomas, J., dissenting from denial of certiorari). Because the constitutional question thus "merely lurk[ed] in the record, neither brought to the attention of the court nor ruled upon," *Scarborough* does not

4

constitute binding precedent on that point. *Modoc Lassen Hous. Auth. v. Dep't of Hous. & Urban Dev.*, 881 F.3d 1181, 1191 (10th Cir. 2017). And in light of the Supreme Court's subsequent clarification of the scope of Congress's Commerce Clause authority in *Lopez*, it is now clear that § 922(g)(1) is unconstitutional.

Because the statute under which Mr. McGlotten is charged is unconstitutional, the Indictment against him should be dismissed.

II. **Section 922(g)(1) Applies Only When the Defendant's *Own* Possession of the Firearm Affected Commerce *at the Time that He Possessed It*; the Mere Fact that a Firearm Was Previously Shipped or Transported in Interstate or Foreign Commerce Does Not Establish that the Defendant's Possession Was "In or Affecting Commerce."**

In order to prove a violation of 18 U.S.C. § 922(g)(1), the government must prove that the defendant's *own* possession of the firearm "affect[ed] commerce" *at the time that he possessed it*. The fact that the firearm was previously shipped or transported in interstate or foreign commerce is not enough to satisfy this requirement.

This conclusion follows from the plain language of the statute. Section 922(g)(1) makes it a crime "for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year"

> To ship or transport in interstate or foreign commerce, *or possess in or affecting commerce*, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1) (emphasis added).

This statutory language makes clear that the offense of *possessing* a firearm in violation of § 922(g)(1) requires proof that the defendant's *own* possession of the firearm affected commerce *at the time that he possessed it*. The adverbial phrase "in or

5

affecting commerce" directly follows—and clearly modifies—the verb "possess"; it does not—and cannot—modify the nouns "firearm or ammunition." *Cf. Nielsen v. Preap*, 139 S. Ct. 954, 964 (2019) (reasoning that, because "[a]n adverb cannot modify a noun," an adverbial phrase cannot be read to modify a noun). Thus, it is the defendant's act of *possession* that must be "in or affecting commerce." *Cf. Jones v. United States*, 529 U.S. 848, 854 (2000) (holding that federal arson statute criminalized the arson of buildings *used* in interstate commerce).

The conclusion that it is the defendant's *possession* that must affect interstate commerce is reinforced by the use of the adverbial present-participle phrase "affecting commerce." It indicates that the offense occurs when the possession *presently* affects commerce—and forecloses any reading of the statute to concern possession of a firearm that occurs only *after* the conduct affecting interstate commerce has been completed. *Cf. Khakhn v. Holder*, 371 F. App'x 933, 937 (10th Cir. 2010) (unpub.) (concluding that prohibition on reinstatement of prior deportation orders against "any alien who is *applying* for adjustment of status" under LIFE act "unambiguous[ly]" applied only so long as the application process was presently ongoing). Put another way, the present-participle phrase indicates that the effect on interstate commerce must occur *at the same time as* the possession, in order to fall within the ambit of § 922(g)(1).

Interpreting § 922(g)(1)'s prohibition of *possession* of firearms to require a *contemporaneous* effect on interstate commerce makes sense when the statute is read as a whole. If Congress wanted to make it a crime for a felon to possess a firearm that had previously "been shipped or transported in interstate or foreign commerce," it would have said so—as it did with respect to the *receipt* portion of the statute, 18 U.S.C.

6

§ 922(g)(1); *see also* 18 U.S.C. § 922(j) (prohibiting the possession of any stolen firearm "which has been shipped or transported in, interstate or foreign commerce, either before or after it was stolen"); *id.* at § 922(k) (prohibiting the possession of any firearm that has an obliterated serial number and "has, at any time, been shipped or transported in interstate or foreign commerce").

The canon of constitutional avoidance provides further support for this reading of § 922(g)(1). Construing § 922(g)(1) to apply to any possession of a firearm that has previously traveled in interstate commerce raises serious constitutional concerns. *See supra* Part I (arguing that Section 922(g)(1) exceeds the Commerce Clause power). To avoid these problems, this Court should construe the statute to apply only when it is the defendant's own possession that has affected interstate commerce. *Cf. Jones*, 529 U.S. at 857-58 (adopting narrower construction of federal arson statute, in part, "to avoid the constitutional question that would arise were we to read § 844(i) to render the 'traditionally local criminal conduct' in which petitioner Jones engaged 'a matter for federal enforcement'" (quoting *United States v. Bass*, 404 U.S. 336, 350 (1971))).

So does the rule of lenity. As set forth above, the phrase "possession in or affecting commerce" unambiguously requires proof that the defendant's act of possession itself affected commerce. However, to the extent that the phrase is ambiguous, this Court should resolve the ambiguity "in favor of lenity." *Skilling v. United States*, 561 U.S. 358, 410 (2010). In *Jones*, for example, the Supreme Court applied the rule of lenity when interpreting the jurisdictional element of the federal arson statute. *See* 529 U.S. at 858. This Court should do the same and conclude that § 922(g)(1) applies only when the defendant's own possession of a firearm affects interstate

commerce at the time that it occurs. The mere fact that the firearm previously crossed a state line, standing alone, does not satisfy this requirement.

The Tenth Circuit has admittedly reached a different conclusion, relying on the Supreme Court's decision in *Scarborough*. *See, e.g.*, *United States v. Hoyle*, 697 F.3d 1158, 1165 (10th Cir. 2012). *Scarborough*, however, addressed a different felon firearms prohibition, enacted as part of the 1968 Omnibus Crime Control and Safe Streets Act. Pub. L. No. 90-351, § 1201, 82 Stat. 197, 236 (June 19, 1968). The 1968 law was repealed and replaced with the Firearms Owners' Protection Act of 1986, Pub. L. No. 99-308, §§ 102, 104, 100 Stat. 449, 452, 459 (May 19, 1986). Unlike the 1968 Act, the 1986 Act was intended not to unduly burden "law-abiding citizens with respect to the acquisition, possession, or use of firearms," *Id.* § 1, 100 Stat. at 449, and was "painstakingly crafted to focus law enforcement on the kinds of Federal firearms violations most likely to contribute to violent firearms crime," 131 Cong. Rec. S23-03, 1985 WL 708013, at *2 (Jan. 3, 1985). *Scarborough*, furthermore, predates the Supreme Court's clarification of the scope of Congress's Commerce Clause authority in cases like *Lopez*. Under these circumstances, *Scarborough* is neither controlling nor persuasive.

Because the Indictment fails to allege that Mr. McGlotten's possession of the firearm affected commerce, it must be dismissed.

### III.     Conclusion

For the above reasons, Mr. McGlotten submits that the Indictment should be dismissed.  However, he recognizes that his arguments are foreclosed by precedent.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

s/ *Stephanie Snyder*
STEPHANIE SNYDER
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
Stephanie_Snyder@fd.org
Attorney for Defendant

## **CERTIFICATE OF SERVICE**

  I hereby certify that on February 3, 2023, I electronically filed the foregoing ***Motion to Dismiss (Indictment)*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email address:

  Laura Cramer-Babycz, Assistant United States Attorney
  Email:  laura.cramer-babycz@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non-CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

  Hassan McGlotten (via U.S. Mail)


         s/ *Stephanie Snyder*
         STEPHANIE SNYDER
         Assistant Federal Public Defender
         633 17th Street, Suite 1000
         Denver, CO  80202
         Telephone: (303) 294-7002
         FAX: (303) 294-1192
         Stephanie_Snyder@fd.org
         Attorney for Defendant