IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-225-REB

UNITED STATES OF AMERICA,

Plaintiff,

v.

HASSAN MCGLOTTEN,

Defendant.

## PLEA AGREEMENT

The United States of America (the government), by and through Laura Cramer-Babycz, Assistant United States Attorney for the District of Colorado, and the defendant, Hassan McGlotten, personally and by counsel, Stephanie Snyder, Assistant Federal Public Defender, hereby submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I. AGREEMENT

**A. Defendant's Plea of Guilty**

The defendant agrees:

(1) to plead guilty to Count 1 of the Indictment, charging a violation of 18 U.S.C. § 922(g)(1) – Possession of a Firearm or Ammunition by a Prohibited Person;

(2) to waive certain appellate and collateral attack rights, as explained in detail below; and

(3) not to contest forfeiture, as more fully described below.

1

Court's Exhibit 1

## B. Government's Obligations

This agreement is made pursuant to Fed. R. Crim. P. 11(c)(1)(B). The government agrees to recommend a sentence of 37 months' imprisonment. The parties understand that this agreement is not binding on the Court.

Provided the defendant does not engage in prohibited conduct or otherwise implicate U.S.S.G. §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government further agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), and agrees to file a motion requesting that the defendant receive a further one-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b).

## C. Defendant's Waiver of Appeal

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1) the sentence exceeds the maximum sentence provided in the statute of conviction, 18 U.S.C. § 922;

(2) the sentence exceeds the top end of the advisory Guidelines range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the Court) at a total offense level of 23; or

(3) the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria

2

apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1) the defendant should receive the benefit of an explicitly retroactive change in the Sentencing Guidelines or sentencing statute;
(2) the defendant was deprived of the effective assistance of counsel; or
(3) the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal any sentence imposed below or within the Guidelines range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the Court during the district court revocation proceedings. In that event, the waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the Guidelines range calculated by the Court.

The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the Court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to

3

consider the facts allegedly establishing extraordinary or compelling circumstances as part of its § 3553(a) analysis.

### D. Forfeiture of Assets

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States or in the possession or control of the defendant or the defendant's nominees or elsewhere. The assets to be forfeited specifically include: (1) Micro Draco .762 caliber pistol, serial number PMD-15588-19; and (2) all recovered ammunition. The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action.

The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters. Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him if notice is not sent within the prescribed time frames.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose on the defendant in addition to forfeiture.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which the defendant will plead guilty are as follows:

4

## COUNT 1: 18 U.S.C. § 922(g)(1)

*First:*   The defendant knowingly possessed a firearm or ammunition.

*Second:*   The defendant was convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year, before he possessed the firearm or ammunition.

*Third:*   At the time he possessed the firearm or ammunition, the defendant knew that he had been convicted of such an offense.

*Fourth:*   Before the defendant possessed the firearm or ammunition, the firearm or ammunition had moved at some time from one state to another.

### III.   STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of Count 1 of the Indictment is not more than 10 years of imprisonment; not more than a $250,000 fine, or both; not more than 3 years of supervised release; and a $100 mandatory victim's fund assessment fee. Restitution is not applicable in this case.

### IV.   COLLATERAL CONSEQUENCES

This felony conviction may cause the loss of civil rights including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

### V.   STIPULATION OF FACTS

The factual basis for this plea is set forth below.   Because the Court must, as part of its sentencing methodology, compute the advisory Guidelines range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations.   To the extent the parties disagree about the facts set

forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts that do not contradict facts to which the parties have stipulated and which are relevant to the Court's Guidelines computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct:

On June 2, 2022, at approximately 2:54 am, the Westminster Police Department (WPD) received a report of a felony menacing at the corner of W. 111th Avenue and North Bryant Court. The initial report was that a black male with a medium build, driving a red Jeep, pulled a gun on the victim.

WPD Officer Gilbert was dispatched to the area at approximately 2:57 am. Officer Gilbert saw a red Jeep Grand Cherokee driving eastbound on 112th Avenue and Pecos Street, leaving the area of the felony menacing report.[1] Officer Gilbert initiated a traffic stop nearby at 115th Avenue and Pecos Street.

After other officers joined Officer Gilbert at the scene of the traffic stop, the defendant, Hassan McGlotten, was ordered out of the driver's side of the red Jeep Grand Cherokee. No one else was in the vehicle. While speaking with the officers, Mr. McGlotten informed them that he decided to drive around after he saw someone trying to break into his car.

Officer Gilbert subsequently found a Micro Draco .762 caliber pistol, serial number PMD-15588-19 under the front passenger seat of the red Jeep that Mr. McGlotten was

---

[1] Mr. McGlotten also lives in the immediate vicinity.

driving. The firearm had one round in the chamber and a 30-round magazine.

Around the same time, Officer Gustafson went to speak with A.B., who reported the felony menacing.[2] A.B. informed the officer that he went outside to smoke a cigarette and was standing at the corner of W. 111th Avenue and Bryant Court. A.B. observed a red Jeep traveling north on Bryant Street that came to a stop at 111th Avenue, drove westbound, passed A.B. and then quickly did a U-turn. According to A.B., the red Jeep stopped in the middle of the road at Bryant Court and 111th Avenue and the black male driver stepped out of the car. The driver then said something that A.B. could not fully hear and pulled a gun from somewhere on the driver's right side. A.B. described the gun as a handgun. A.B. further stated that the driver racked the gun, loading a round of ammunition, at which point A.B. ran into the house. A.B. was scared for his life when the driver reached for the gun.

Officers conducted a show-up identification with A.B. Upon seeing Mr. McGlotten, A.B. said that he was "90% sure" that Mr. McGlotten was the person who had pulled a gun on him.

The parties stipulate that the Micro Draco pistol described above functioned as designed. Moreover, neither the above-listed firearm nor the ammunition was

---

[2] The information regarding the felony menacing is based on A.B.'s statements to law enforcement. Mr. McGlotten agrees that he drove up to A.B., and asked if he lived in the neighborhood and what he was doing outside at that time of night. However, Mr. McGlotten denies that he ever pulled out or pointed a gun at A.B.

manufactured in the state of Colorado and, therefore, must have traveled in and/or affected interstate commerce.

Prior to June 2, 2022, Mr. McGlotten had been convicted of a felony punishable by imprisonment for a term exceeding one year. At the time Mr. McGlotten possessed the firearms and ammunition listed above, he knew he had been convicted of a felony punishable by more than one year imprisonment, and therefore knew that he was prohibited from possessing firearms and ammunition.

The parties stipulate that all of the above conduct occurred in the District of Colorado.

## VI.  ADVISORY GUIDELINES COMPUTATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory Guidelines issued by the United States Sentencing Commission. To aid the Court in this regard, the parties set forth below their estimate of the advisory Guidelines range called for by the United States Sentencing Guidelines (U.S.S.G.). To the extent that the parties disagree about the Guideline computations, the recitation below identifies the matters which are in dispute.

The Guidelines calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct Guidelines range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the

estimate below.

**Offense level**

A. Base offense level: The base offense level is 22 because (1) the firearm was capable of accepting a large capacity magazine, and (2) the defendant committed the offense after sustaining one felony conviction for a crime of violence. U.S.S.G. § 2K2.1(a)(3).

B. Specific offense characteristics: The government asserts that four levels are added because the defendant used the firearm in connection with another felony offense, *i.e.*, felony menacing. U.S.S.G. § 2K2.1(b)(6)(B). The defense disputes the applicability of this enhancement.

C. Adjusted offense level: The government's estimate of the adjusted offense level is thus 26, while the defense estimates that it is 22.

D. Acceptance of responsibility: The parties agree that a three-level decrease for acceptance of responsibility applies under U.S.S.G. § 3E1.1(a) and (b), which results in a total offense level of 23 under the government's calculations and 19 under the defendant's.

**Criminal history**

E. The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category III.

F. The career offender/criminal livelihood/armed career criminal adjustments do not apply.

**Guidelines ranges**

G. <u>Imprisonment range</u>: The advisory Guidelines range resulting from an offense level of 23 and criminal history category III is 57–71 months' imprisonment. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 46 months (bottom of Category I) to 115 months (top of Category VI). The advisory Guidelines range resulting from an offense level of 19 and criminal history category III is 37–46 months' imprisonment. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 30 months (bottom of Category I) to 78 months (top of Category VI). The Guidelines range would not exceed, in any case, the statutory maximum applicable to the count of conviction.

H. <u>Fine range</u>: Pursuant to U.S.S.G. § 5E1.2, assuming an estimated offense level of 23, the fine range for this offense would be $20,000 to $200,000, plus applicable interest and penalties. If the Court determines that the estimated offense level is 19, the fine range for this offense would be $10,000 to $100,000, plus applicable interest and penalties,

I. <u>Supervised release</u>: Pursuant to U.S.S.G. § 5D1.2, if the Court imposes a term of supervised release, that term shall not be less than 1 year but not more than 3 years.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it

10

deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory Guidelines range, or above the advisory Guidelines range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.  ENTIRE AGREEMENT

This document states the parties' entire agreement.  There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied.  In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 3-20-23

_____
Hassan McGlotten
Defendant

Date: 3/20/23

_____
Stephanie Snyder
Attorney for the Defendant

Date: 3/22/23

_____
Laura Cramer-Babycz
Assistant United States Attorney